**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **GELA JANKARASHVILI, A#226-025-890** | **CIVIL ACTION NO. 25-1565 SEC P** |
| **VERSUS** | **JUDGE EDWARDS** |
| **ANGEL WOLFE** | **MAG. JUDGE PEREZ-MONTES** |

## MEMORANDUM RULING AND ORDER

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 filed by Petitioner Gela Jankarashvili ("Jankarashvili"), an immigration detainee at Winn Correctional Center in Winnfield, Louisiana. Jankarashvili alleges that he is subject to unconstitutional, prolonged detention.

Because the Government has met its burden under *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Petition will be DENIED.

## I. Background

Jankarashvili is a native and citizen of Georgia. ECF No. 10-1 at 1. He entered the United States without inspection or parole on May 4, 2024, and has remained detained since that time. *Id.* On December 23, 2024, an immigration judge ordered Jankarashvili removed to Georgia but granted him withholding of removal under § 241(b)(3) of the Immigration and Nationality Act ("INA"). *Id.* The Department of Homeland Security ("DHS") appealed that decision but withdrew its appeal on March 4, 2025, at which time the removal order became administratively final. *Id.*

Jankarashvili filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, alleging that his continued post-removal-order detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001). ECF No. 1. In response, the Government submitted a May 1, 2026 declaration of Assistant Field Office Director Matthew W. Reaves ("Reaves") stating that Jankarashvili was removed to Moldova on April 29, 2026. ECF No. 10-1 at 1. However, the Government's Response indicates that Moldova rejected Jankarashvili on May 3, 2026, after the declaration was signed. ECF No. 10 at 5.

On May 13, 2026, the Magistrate Judge issued a Report and Recommendation recommending that the Petition be granted and that Jankarashvili be released under appropriate conditions. ECF No. 12. The Magistrate Judge concluded that Jankarashvili's grant of withholding of removal to Georgia and Moldova's rejection of him provided good reason to believe that his removal was not significantly likely in the reasonably foreseeable future. *Id*. at 4. The Magistrate Judge further found that the Government had not produced evidence sufficient to rebut Jankarashvili's showing. *Id*. at 4–5.

The Government objected and submitted additional evidence. ECF No. 13. According to the Government, Jankarashvili was placed on a Special High-Risk Charter flight to Moldova on May 3, 2026, but Moldova rejected him because his Georgian passport contained a fraudulent Japanese visa. ECF No. 13-1 at 2. On May 6, 2026, an ICE official advised that Jankarashvili would need a new Georgian passport. *Id*. at 2–3. At that time, ICE understood that obtaining a new passport

would require Jankarashvili to attend an in-person interview at the Georgian consulate in New York. *Id*. at 3. Acting Assistant Field Office Director Justin Williams ("Williams") stated in a new declaration that he discussed the proposed interview with Jankarashvili on May 14, 2026, but Jankarashvili refused to speak with the Georgian consulate. *Id*. at 3, 6–7. The Government argued that Jankarashvili's refusal to participate in that process had prolonged his detention and frustrated an otherwise viable removal to Moldova. *Id*. at 3–4.

Jankarashvili replied that his grant of withholding prohibited his removal to Georgia and that his refusal to communicate with Georgian officials should not be characterized as noncooperation. ECF No. 14 at 1–2. He maintained that he remained willing to cooperate with lawful efforts to remove him to a third country and that Moldova's rejection was beyond his control. *Id*. at 2. On June 5, 2026, the Court referred the matter back to the Magistrate Judge for consideration of the Government's new evidence. ECF No. 15.

On July 17, 2026, Jankarashvili filed a Motion for Emergency Status Conference, citing his continued detention, unsuccessful removal efforts, and medical condition. ECF No. 16. The Court withdrew the referral to the Magistrate Judge and denied the request for a status conference. ECF No. 17 at 1–2. The Court ordered the Government to submit, no later than July 23, 2026, a supplemental brief supported by a declaration confirming whether Jankarashvili could complete the necessary Georgian-consulate process virtually. *Id*. at 1. The Court also permitted

Jankarashvili to reply and address whether a new Georgian passport was necessary to facilitate his removal to a third country. *Id.*

The Government did not file its supplemental brief by July 23, 2026. On July 27, 2026, Jankarashvili filed a response arguing that the Government's failure to comply with the Court's Order demonstrated its inability to establish that the consular process was feasible or that a new passport would result in his removal. ECF No. 18 at 1–3. Jankarashvili also submitted documents from Moldovan border authorities reflecting that he had been denied entry because his passport contained a false, counterfeit, forged, or illegally modified visa or residence permit. ECF No. 18-1 at 2–3.

On July 28, 2026, the Government filed its supplemental brief and explained that its failure to meet the deadline resulted from a calendaring error. ECF No. 19 at 1. In a supplemental declaration, Williams confirmed that Moldova rejected Jankarashvili because of the fraudulent Japanese visa. ECF No. 19-1 at 1. Williams further stated that, on May 14, 2026, Jankarashvili refused to participate in an in-person interview with the Georgian Embassy. *Id.* at 2. Williams acknowledged, however, that because Jankarashvili had been granted withholding of removal to Georgia, he "technically" could not be cited for failing to comply with the request to visit the Embassy. *Id.*[1]

[1] Williams attests: "Petitioner has been granted withholding of removal to Georgia; therefore, technically, he could not be cited for a failure to comply because he could not be made to go to the Georgian Embassy." ECF No. 19-1 at 2.

Williams also stated that Jankarashvili had no removal flight scheduled as of June 12, 2026. *Id.* Jankarashvili was subsequently served with Forms I-229 warning him of his obligation to assist ICE in obtaining a travel document, but he refused to sign the forms. *Id.* Finally, Williams stated that the Georgian Embassy had agreed to waive the in-person interview and is willing to issue Jankarashvili a new passport, subject to its review of a new travel document request and receipt of a money order. *Id.* The Government's supplemental brief additionally represents that Moldova provided diplomatic assurances and accepted Jankarashvili for removal. ECF No. 19 at 1–2.

Jankarashvili responded the same day. ECF No. 20. His counsel confirmed that he had advised Jankarashvili not to communicate with Georgian officials, but disputed the Government's characterization of the reason for that advice. *Id.* at 1–2. Jankarashvili further argued that the Government has not provided evidence that a new passport request has been submitted, that the Georgian Embassy will issue a new passport within any particular time-frame, or that Moldova has agreed to accept Jankarashvili if a new passport is issued. *Id.* at 2–3.

## II. Law and Analysis

### A. Standard of Review

When a party timely objects to a magistrate judge's report and recommendation, the district court must conduct a de novo review of the portions to which the party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court may accept, reject, or modify the recommendations, receive additional evidence, or

return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b). The Court has considered the Government's objections, the evidence submitted with those objections, and the parties' supplemental filings.

Although the Government's supplemental brief was filed after the deadline established by the Court, the Court will consider the filing and supporting declaration. The Court therefore resolves the Petition on the complete record.

### B. Continued Detention Under *Zadvydas*

When an alien is ordered removed, the Government generally must remove him within 90 days. 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(6) permits detention beyond the 90-day removal period, but only for a period reasonably necessary to effectuate removal. *Zadvydas*, 533 U.S. at 689, 699. Detention for six months is presumptively reasonable. *Id.* at 701. After that period, if the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. *Id.; Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018). The alien bears the initial burden, and the passage of six months alone is not sufficient. *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). However, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701.

The Government first objects that Jankarashvili failed to satisfy his initial burden. The Court disagrees. Jankarashvili's removal order became

administratively final on March 4, 2025, and he has now been detained under that order for approximately 17 months. Jankarashvili does not rely on the duration of his detention alone, as the Government claims. He was granted withholding of removal to Georgia, and the Government's attempt to remove him to Moldova failed when Moldovan authorities denied him entry. ECF No. 19-1 at 1. These circumstances provide more than speculation or conjecture and give Jankarashvili good reason to believe that his removal is not significantly likely in the reasonably foreseeable future. *See Idowu v. Ridge*, No. 03-CV-1293, 2003 WL 21805198, at *4 (N.D. Tex. Aug. 4, 2003) (citing *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)). The burden therefore shifts to the Government.

The Government's supplemental evidence establishes that removal is significantly likely to occur in the reasonably foreseeable future. The Government represents in its Objection that DHS and the Department of State had finalized a third-country removal agreement with Moldova, that Moldova had provided diplomatic assurances, and that the Department of State had determined those assurances to be credible. ECF No. 13-1 at 4. The Government's evidence confirmed that Petitioner was recently flown to Moldova but rejected by Moldovan authorities due to Petitioner's fraudulent Japanese visa. It is undisputed that Petitioner has thwarted the Government's efforts to obtain a new passport to effect Petitioner's removal. The Government has now identified a new path to obtain a passport for Petitioner that satisfies Petitioner's concerns regarding the Georgian consulate. Williams states that the Embassy is willing to waive the in-person interview and

issue a new passport, subject to its review of a new travel document request and receipt of a money order. *Id.*

Given the recency of these events, the Government has met its burden under *Zadvydas* to establish a significant likelihood of removal in the reasonably foreseeable future. Should the Government's efforts to remove Petitioner stall, and the Petitioner has complied with the Government's requests to assist with his removal, then these facts will bolster Petitioner's future habeas claim.

## III. Conclusion

Because the Government has met its burden under *Zadvydas*, IT IS ORDERED that the Government's Objection (ECF No. 13) is SUSTAINED; the Court DECLINES to adopt the Report and Recommendation (ECF No. 12); the Petition (ECF No. 1) is DENIED WITHOUT PREJUDICE.

THUS ORDERED AND SIGNED in Chambers this 11th day of August, 2026.

**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**